STATE OF NEBRASKA EX REL. JOHN RAITT ET AL., APPELLANTS, v. VAL PETERSON, GOVERNOR, ET AL., APPELLEES.

57 N. W. 2d 280

Filed March 13, 1953. No. 33289.

*Beynon, Greenamyre & Hecht,* for appellants.

*Clarence S. Beck,* Attorney General, and *Robert A. Nelson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action in mandamus by John Raitt and Roy D. Raitt, the highest bidders at a public sale of school land leases, the relators, to compel the Board of Educational Lands and Funds, and the members and officers thereof, the respondents, to execute and deliver to them a school land lease in accordance with the terms of the bid and the provisions of sections 72-233 and 72-234,

R. R. S. 1943. The trial court denied the issuance of a writ of mandamus and the relators have appealed.

The record shows that the Board of Educational Lands and Funds caused a school land lease to be executed and delivered to the relators on October 24, 1949, for a period of 12 years. On August 13, 1951, the Board of Educational Lands and Funds declared the lease to be void and of no force and effect under the authority of a decision of this court entitled State ex rel. Ebke v. Board of Educational Lands and Funds, 154 Neb. 244, 47 N. W. 2d 520. The correctness of the action of the board in voiding the 12-year lease is not questioned in this proceeding. Thereafter the board caused the lands involved to be reappraised and offered the lease for sale at public auction on March 21, 1952. The relators attended the sale and bid $500 for the lease in addition to the rentals reserved therein, the same being the highest bid received. Thereafter the relators made application for the lease of the school lands involved and delivered their checks for the amount of the bid and the semiannual rental for the first 6-months' period of the proposed lease. Thereafter, and on March 28, 1952, the board received an offer in writing from A. E. Schoettger and Duane Schoettger wherein they offered $1,000 for the lease in addition to the rentals reserved, which offer was accompanied by a bank draft in the amount of $1,250 to cover the bid of $1,000, the first semiannual rental payment, and expenses in connection therewith. On April 28, 1952, the board rejected the bid of relators and directed a resale of the lease at public auction. It is the contention of relators that it was the mandatory duty of the board to accept their bid, approve their application, and then execute and deliver a lease to them. It is the contention of the board that the adequacy of the bid is for its determination and where it is shown that a resale will result in a greater return to the trust fund, in which it is in the position of a trustee, it is

the duty of the board to reject the bid and order a re-sale of the lease.

The state holds, as trustee, the public school lands within the state, including the income therefrom. It is the duty of a trustee to obtain a maximum return to the trust estate from the trust properties under its control, subject to the taking of necessary precautions for the preservation of the trust estate. State ex rel. Ebke v. Board of Educational Lands and Funds, *supra*. In this respect, sections 72-233 and 72-234, R. R. S. 1943, providing for the selling of school land leases at public auction, are not mandatory statutes which require that a school land lease be executed and delivered to the highest bidder under any and all circumstances. The Board of Educational Lands and Funds has the right to exercise its discretion in determining if the sale was fairly conducted and whether the lease sold for a fair and reasonable value. There is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions. Ordinarily, such differences must be determined by the intent of the Legislature as gleaned from the whole statute. But in the present case the Constitution requires that the property be dealt with in a manner consonant with the duties and functions of a trustee acting in a fiduciary capacity. It thus imposes upon the board the duty of obtaining a fair market value for all trust property that it may sell. A fair construction of the statutes, viewed in the light of their constitutional background, requires us to hold that the highest bidder at a public sale of school land leases is not entitled to a lease until it has been approved by the board. The board may properly exercise a reasonable discretion in determining if the sale was fairly held and if the property sold for a fair and reasonable value. In its fiduciary capacity the board is not required to approve a sale that is manifestly detrimental to the trust. Where a statute is dealing with a procedure to be followed, it will ordinarily be

construed as directory only where the matter to which it relates is a proper subject for the exercise of a judicial discretion, notwithstanding the use of imperative terms. We think the rule stated in State ex rel. Rutledge v. Eaton, 78 Neb. 202, 110 N. W. 709, is particularly applicable: "Where a lessee of school land exercises his option and makes an application to purchase, the board of educational lands and funds may, in the exercise of a reasonable discretion, reject the appraisement, if it appears that the amount of such appraisement is so much less than the actual value of the land as to lead to the conclusion that the appraisement was the result of fraud or mistake." We do not think that the statutes in question, when construed with applicable constitutional provisions, require the Board of Educational Lands and Funds to execute and deliver a school land lease to the highest bidder at a public sale of school land leases, but that the board may exercise a reasonable discretion in approving or rejecting such a bid. The question immediately arises as to whether or not a mandamus action can be maintained under such circumstances. In view of the result at which we have arrived, we shall give no consideration to that matter in this opinion.

The only remaining question is whether or not the Board of Educational Lands and Funds acted within its powers in rejecting the bid of the relators. The record shows that an upset bid of $1,000 was made 1 week after the sale. We think the rule governing upset bids at judicial sales is applicable here. If the sale was fairly conducted and the property sold for a reasonable and fair value under the circumstances, the board would ordinarily be required, in the exercise of a reasonable discretion, to approve the sale and make the lease. An upset bid, made after the sale and before the approval and acceptance of the highest bid at the public auction, is relevant only to the extent that it bears upon the fairness of the sale and the adequacy of the highest bid at the public auction. State ex rel. Sorensen v.

Denton State Bank, 126 Neb. 486, 253 N. W. 670; County of Gage v. Beatrice Nebraska Water Co., 147 Neb. 236, 22 N. W. 2d 696. Where the upset bid is substantial and material, and not merely nominal, it tends to establish the inadequacy of the highest bid procured at the sale. County of Lancaster v. Schwarz, 152 Neb. 15, 39 N. W. 2d 921. In the present case the upset bid was made within a week after the public auction. The highest bid at the public auction was $500 above the rentals reserved, and the upset bid was $1,000 above the rentals reserved. We think this evidence is sufficient for the board to determine in the exercise of a reasonable discretion that the highest bid was inadequate. Consequently it was clearly within its powers in rejecting the bid of the relators and ordering a resale of the lease. The trial court therefore properly denied a writ of mandamus.

AFFIRMED.