256 N.W.2d 318 (1977)
198 Neb. 793
Earl ANDERSON, Appellee,
v.
BOARD OF EDUCATIONAL LANDS AND FUNDS, a public body, and John B. Cassel, Tom C. Allington, Wallace L. Farrar, John C. Mitchell, Vince E. Rossiter, Sr., members of said board, Appellants.
No. 41084.
Supreme Court of Nebraska.
July 6, 1977.
*320 Paul L. Douglas, Atty. Gen., Bernard L. Packett, Asst. Atty. Gen., Lincoln, for appellants.
Healey, Healey, Brown, Wieland & Glynn, Lincoln, for appellee.
Heard before WHITE, C. J., and SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY and WHITE, JJ.
SPENCER, Justice.
This is an action to require the Board of Educational Lands and Funds to issue a lease of certain school lands to Earl Anderson who was the highest bidder at a public sale. The issue presented is whether the defendant could reject the application for the lease from plaintiff, the highest bidder, and reoffer the land for lease with the post-sale offer as the starting bid. The trial court found the rejection of the bid to be void, vacated the action of the Board, and directed the issuance of a lease to the plaintiff. We reverse.
Pursuant to the provisions of section 72-233, R.R.S.1943, the Board of Educational Lands and Funds, hereinafter referred to as Board, directed that the lease of certain school lands in Buffalo County be offered for sale. Notice of the lease sale was duly published. The last paragraph of the published notice provided: "All sales of educational land at public auctions are considered to be non-revocable offers, which only upon acceptance and approval by the Board of Educational Lands and Funds meeting in regular session, shall become binding contracts."
Ron Vance, an appraiser for the Board, conducted the sale on January 7, 1976. Plaintiff was the final bidder, with a bonus bid of $10,600. When he closed the sale, Vance informed all present that the final bid was subject to the acceptance and approval of the Board of Educational Lands and Funds, and would be presented to it at its regular meeting on January 12, 1976. After the sale, plaintiff made out and signed an application for a lease, and submitted with it his check in the amount of the first year's rent plus his bonus bid of $10,600.
Prior to the meeting on January 12, the Board received an oral commitment for an upset bonus bid of $11,660 plus the stipulated rental. The Board did not accept plaintiff's application for lease, but directed that the tract be readvertised and the lease offered for sale. It further directed that the bonus bidding start with the bid of $11,660. Plaintiff thereafter filed this action, which stayed further proceedings.
Article VII, section 6, Constitution of Nebraska, so far as material herein, provides: "The general management of all land set apart for educational purposes shall be vested, under the direction of the Legislature, in a board of five members to be known as the Board of Educational Lands and Funds."
The state holds the public school lands, including the income therefrom, as trustee. It is the duty of the trustee to obtain the maximum return to the trust estate from the trust properties under its *321 control. This is subject to the taking of necessary precautions for the preservation of the trust estate. State ex rel. Ebke v. Board of Educational Land & Funds, 154 Neb. 244, 47 N.W.2d 520 (1951).
We have previously held sections 72-233 and 72-234, R.R.S.1943, providing for the selling of public school land leases at public auction, are not mandatory statutes which require that a school land lease be executed and delivered to the highest bidder under any and all circumstances. State ex rel. Raitt v. Peterson, 156 Neb. 678, 57 N.W.2d 280 (1953).
The Board has the right to exercise its discretion in determining if the sale was fairly conducted and whether the lease sold for a fair and reasonable value. There is no universal test by which directory provisions of the statute may be distinguished from mandatory provisions. Ordinarily, such differences must be determined by the intent of the Legislature as gleaned from the whole statute.
In the present case, the Constitution requires that the trust property be dealt with in a manner consonant with the duties and functions of a trustee acting in a fiduciary capacity. It thus imposes upon the Board the duty of obtaining the highest price possible for all trust property that it may sell. A fair construction of the statutes, viewed in the light of their constitutional background, requires us to hold that the highest bidder at a public sale of school land leases is not entitled to a lease until it has been approved by the Board. See, State ex rel. Raitt v. Peterson, supra; State ex rel. Ebke v. Board of Educational Lands & Funds, supra.
The notice of sale in this instance advised prospective bidders that all sales would be considered to be nonrevocable offers which would become binding contracts only upon acceptance and approval by the Board meeting in regular session. At the conclusion of the sale, Vance informed all present the final bid was subject to the approval and acceptance of the Board. He also stated that it would be presented to the Board at its next regular meeting on January 12, 1976.
Within the intervening 5 days, Gerald Geisler, who had been a bidder at the sale, submitted a bonus bid of $11,660 as an upset bid. This was an increased bid of 10 percent. He was advised that he was required to also submit a check for $250 to cover the expense of a new sale. This amount would not be refundable. He was also required to send a certified check for the first year's annual rent in the amount of $2,369.20, together with a check for $11,660.
In Raitt, we suggested that the rule governing upset bids at judicial sales was applicable in that case. However, as pointed out in Bessey v. Board of Educational Lands & Funds, 185 Neb. 801, 178 N.W.2d 794 (1970), this proceeding is not a judicial sale and the rules applicable thereto are not relevant. That case involved the statute providing for the mandatory sale of school lands. We modify those statements by saying that the rules applied to judicial sales may be helpful in determining questions arising under the present statutes referring to sales by the Board. These sales are within the primary jurisdiction of the Board, and a court should not interfere with the discretion of the Board unless it is apparent that the Board's action is shown to be arbitrary and unreasonable.
In the present case the Board advertised that all bids were subject to its acceptance and approval, and until accepted there would be no binding contract. In its discretion, the Board saw fit to refuse the offer and to order a new sale, initiating the auction at the amount of the upset bid, $11,660, which is 10 percent more than the plaintiff's bid. In Rupe v. Oldenburg, 184 Neb. 229, 166 N.W.2d 417 (1969), this court unanimously approved the setting aside of a partition sale even after the sale had been initially confirmed by the court after a higher upset bid. The amount of the upset bid made after confirmation exceeded the initially confirmed bid by $50 more than 10 percent.
*322 On the record, we cannot say that the action of the Board in rejecting the plaintiff's bid was arbitrary or unreasonable. It is the duty of the Board as trustee of school lands to obtain a maximum return for the trust estate from its sale of school lands or leases. While we do not believe that the Board should be too liberal in accepting an upset bid, we cannot say in this instance that its action was arbitrary or unreasonable. With the new sale, starting with the upset bid, it is very possible a greater sum may be realized. In any event, the Board will receive at least 10 percent more than the bid it refused to accept, and the upset bidder is paying the costs of the resale.
The judgment of the trial court is reversed. Its vacation of the action of the Board is vacated, and the action is dismissed.
REVERSED AND DISMISSED.
McCOWN, Justice, dissenting.
It is admitted that the public auction sale of a school land lease involved here was fully advertised and fairly conducted, that the plaintiff submitted the highest bid, and that the bid was a fair, adequate, and reasonable amount. Five days after the sale the Board of Educational Lands and Funds rejected the highest bid and ordered the lease to be resold. The upset bid, a 10 percent increase, was made by an unsuccessful bidder at the public auction sale who was also the previous leaseholder. At the time the board rejected the highest bid and ordered the lease resold, the upset bid was not even written, nor was there any specific amount involved. Neither had the upset bidder submitted any written offer, nor any guaranties or checks in support of the upset bid. These documents were apparently executed later.
On those facts this court now holds that where a public auction sale of a school land lease is duly and fully advertised and fairly conducted, and the highest bid is for a fair, adequate, and reasonable amount, an unsuccessful bidder may obtain a resale simply by submitting a later upset bid for 10 percent more than the amount of the highest bid at the auction. Specifically this court holds that the action of the Board of Educational Lands and Funds in rejecting the highest bid at the public auction and ordering the lease resold was a reasonable exercise of its discretionary power to accept or reject all bids, and was not arbitrary or unreasonable. Indirectly this court holds that the rules governing upset bids at judicial sales are not applicable to sales of school land leases at public auction by the Board of Educational Lands and Funds. The decision in this case also means that the stability and integrity of public auction sales of school land leases by the Board of Educational Lands and Funds is of little or no importance, and that the discretion of the board to accept or reject the highest bid is far broader than the judicial discretion vested in a court to confirm or reject a similar bid at a judicial sale. Such distinctions have no legal, logical, or practical foundation.
The majority opinion concedes that this court has previously "suggested" that the rules governing upset bids at judicial sales were applicable to public auction sales of school land leases, and also concedes that the rules applied to judicial sales "may be helpful" in determining considerations arising in sales by the Board of Educational Lands and Funds.
In a case involving the sale of a school land lease, State ex rel. Raitt v. Peterson, 156 Neb. 678, 57 N.W.2d 280, this court said: "We think the rule governing upset bids at judicial sales is applicable here. If the sale was fairly conducted and the property sold for a reasonable and fair value under the circumstances, the board would ordinarily be required, in the exercise of a reasonable discretion, to approve the sale and make the lease. An upset bid, made after the sale and before the approval and acceptance of the highest bid at the public auction, is relevant only to the extent that it bears upon the fairness of the sale and the adequacy of the highest bid at the public auction."
Where, as in the case at bar, it is admitted that the public auction sale was fairly conducted, and that the highest bid was for *323 a fair, adequate, and reasonable amount, it seems clear that the refusal of the board to approve the highest bid and make the lease was arbitrary and unreasonable.
A crucial difference between the Raitt case and this case, however, is that in the Raitt case the upset bidder had not been a bidder at the public auction sale, and there was no evidence that the auction bid was adequate or inadequate. That difference is critical and determinative. In Hull v. Hull, 183 Neb. 773, 164 N.W.2d 455, this court referred to the problem involved in the stability and integrity of judicial sales where the upset bidder was present or bidding at the judicial sale. We held in that case that an upset bid following a judicial sale and before confirmation should be considered when it affords convincing proof that the property was sold at an inadequate price, and that a just regard for the rights of all concerned and the stability of judicial sales permit its acceptance. We said: "It has been generally understood by the profession and enforced by the courts that for obvious reasons one who has been a bidder at the sale by himself or by an agent will not, as a general rule, be permitted to put in an upset bid." See, also, 47 Am.Jur.2d, Judicial Sales, § 165, p. 429.
The only basis given for the majority policy decision in this case is the undisputed fact that the board holds the school lands as a fiduciary and must obtain the highest price possible. There is nothing unusual about that. The same thing is true in any sale by any fiduciary, and the same fact is certainly true in any judicial sale.
There is also a strong public policy in favor of preserving the stability and integrity of a public auction of school land leases, just as there is a strong public policy in favor of maintaining the stability and integrity of judicial sales. If a public auction sale for a fair and reasonable price can be upset and overturned by a later change of mind of a person who was present at the auction and had a chance to bid but was outbid, the stability and integrity of all school land lease auctions has been threatened and in the long run lower prices will result at auctions.
The facts in this case are admitted. As this court said in Rupe v. Oldenburg, 184 Neb. 229, 166 N.W.2d 417: "If upset bids were permitted and accepted under all circumstances, the holding of a judicial sale would be nothing more than preliminary bidding and not a method of purchasing the land. Such a practice would chill the bidding at the judicial sale by encouraging the filing of upset bids and render the judicial sale a mere formality and the elimination of the primary purpose of judicial sales. This is most harmful to the stability and true purpose of judicial sales which trial courts should not lightly disregard."
A decision which places the acceptance or rejection of the highest bid at a public auction sale of a school land lease under different rules than those applicable to judicial sales, in my opinion, is not good public policy nor good judicial policy. Where the evidence and pleadings establish that the sale was regularly held and fairly conducted, and that the lease was sold for a reasonable and adequate price, an upset bid should not outweigh all the other evidence, much less be treated as conclusive evidence to the contrary.
In the case before us the District Court specifically found from the pleadings and the undisputed evidence that the lease sale auction involved here "was fully advertised and fairly conducted, and the plaintiff made and submitted the highest bid for a fair, adequate, and reasonable amount, and thereafter complied with all requirements incumbent upon him as the successful bidder to obtain said lease." The District Court also found: "The persons having submitted the purported upset bid, having been present at the auction, having participated in the auction bidding, and having been available to submit a higher bid at that time, but not having done so, are barred and estopped from submitting an upset bid thereafter to overturn the results of the sale." The trial court's determination and judgment was eminently correct and should have been affirmed by this court.
*324 BOSLAUGH, Justice, dissenting.
I concur fully in Judge McCown's dissenting opinion. If the successful bidder at the public auction of a school land lease buys only a lawsuit instead of a lease, there is little incentive to bid at the auction.