JOHN A. TROSHYNSKI, APPELLEE, V. NEBRASKA STATE BOARD
OF PUBLIC ACCOUNTANCY, AN AGENCY OF THE
STATE OF NEBRASKA, APPELLANT.
701 N.W.2d 379

Filed August 5, 2005. No. S-04-510.

Jon Bruning, Attorney General, and Lynn A. Melson for appellant.

D.C. Bradford and Justin D. Eichmann, of Bradford & Coenen, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The Nebraska State Board of Public Accountancy (the Board) appeals from an order of the district court for Lancaster County reversing the Board's decision to deny John A. Troshynski a certificate of certified public accountant (CPA) based upon his prior felony conviction. We are asked to decide whether Neb. Rev. Stat. § 1-114 (Cum. Supp. 2004) prohibits the Board from exercising discretion to refuse a certificate when an applicant meets the statute's enumerated requirements. We determine that the statute does not prohibit the Board from using its rulemaking powers to establish character and fitness standards, but conclude that it has not done so, and we therefore affirm the judgment of the district court.

## BACKGROUND

In 1990, Troshynski pled guilty to a felony charge of conspiracy to distribute cocaine and was sentenced to 46 months' incarceration and 3 years of supervised release. During his incarceration, Troshynski earned his associate's degree and successfully completed drug and alcohol recovery programs. His supervised release was terminated 1 year early in May 1996.

Following his release, Troshynski earned a bachelor's degree in business administration from Creighton University. Subsequently, he worked for various firms, including an accounting firm where he was employed for 3½ years. At least two of the partners at this firm knew of his felony conviction and nonetheless recommended him for the position of controller with one of the firm's clients. In 1996, Troshynski submitted an application to the Board to sit

for the CPA examination. On that application, he disclosed his felony conviction. In November 1999, Troshynski sat for and passed the CPA examination, and on September 8, 2000, the Board received his application for a CPA certificate. On this application, Troshynski again disclosed his felony conviction. At the Board's request, he also provided additional information, letters of explanation, and certain federal court documents related to his conviction and sentence.

In a letter dated May 18, 2001, the Board advised Troshynski that it had denied his application for a certificate at its April 30-May 1 meeting. No reason for the denial was stated. Troshynski appealed the Board's decision to the district court pursuant to the Administrative Procedure Act. The district court determined that the Board's use of discretion in denying Troshynski's application was a quasi-judicial function, entitling Troshynski to due process rights. The court therefore reversed the Board's decision and remanded the case for a full and fair hearing after proper notice.

On April 4, 2003, the Commission issued a notice of hearing directed to Troshynski and his attorney, indicating that pursuant to the order of the district court, it would conduct a hearing on May 8, 2003, "with respect . . . to [Troshynski's] application filed with the Board on September 8, 200[0]." The notice did not provide any further specification regarding the facts or issues to be addressed at the hearing. After the hearing, the Board issued a final order declaring that based upon Troshynski's 1990 felony conviction, he was not entitled to the issuance of a CPA certificate. The Board concluded that although "the technical requirements for the issuance of the certificate may have been met, the Board has the right to pass upon the fitness of the applicant and to take into consideration the prior conviction of a felony of the nature committed by the respondent."

Troshynski appealed again. In its de novo review, the district court concluded that the Board was statutorily mandated to issue a certificate once an applicant met the criteria of § 1-114. The court also noted that Troshynski had demonstrated, through his accounting career and his personal life, that he would likely achieve a high degree of moral and ethical integrity as a certified public accountant. The court reversed the Board's decision

and remanded the matter with instructions that the Board grant Troshynski a certificate of certified public accountant.

## ASSIGNMENTS OF ERROR

The Board assigns that the district court erred in (1) determining that the Board lacked discretion to grant or refuse a certificate of certified public accountant and (2) suggesting that Troshynski had demonstrated the requisite fitness for the issuance of a certificate of certified public accountant.

## STANDARD OF REVIEW

 A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Zwygart v. State, ante* p. 41, 699 N.W.2d 362 (2005). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Forgét v. State*, 265 Neb. 488, 658 N.W.2d 271 (2003).

 Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Lein v. Nesbitt*, 269 Neb. 109, 690 N.W.2d 799 (2005). Statutory interpretation is a matter of law in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *AMISUB v. Board of Cty. Comrs. of Douglas Cty.*, 244 Neb. 657, 508 N.W.2d 827 (1993).

## ANALYSIS

The Public Accountancy Act is codified at Neb. Rev. Stat. §§ 1-105 to 1-171 (Reissue 1997 & Cum. Supp. 2004) and provides for the creation of the Board in § 1-107. The stated purpose of the Board is

> to protect the welfare of the citizens of the state by assuring the competency of persons regulated under the Public Accountancy Act through (1) administration of certified public accountant examinations, (2) issuance of certificates

and permits to qualified persons and firms, (3) monitoring the requirements for continued issuance of certificates and permits, and (4) disciplining certificate and permit holders who fail to comply with the technical or ethical standards of the public accountancy profession.

§ 1-105.01. In furtherance of its general purpose, the Board is authorized to "adopt and promulgate rules and regulations of professional conduct appropriate to establish and maintain a high standard of integrity and dignity in the profession of public accountancy." § 1-112.

Concerning issuance of certificates, § 1-114(2) provides:

On and after January 1, 1998, the board shall issue a certificate of certified public accountant to any person (a) who is a resident of this state or has a place of business in this state or, as an employee, is regularly employed in this state and (b) who has passed a written examination in accounting, auditing, and such other related subjects as the board determines to be appropriate.

At issue is whether inclusion of the word "shall" in § 1-114 mandates that in all instances, the Board must issue a certificate to any applicant who meets the residency requirement and passes the CPA examination.

As a general rule, the word "shall" in a statute is considered mandatory and is inconsistent with the idea of discretion. *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 647 N.W.2d 615 (2002); *Spradlin v. Dairyland Ins. Co.*, 263 Neb. 688, 641 N.W.2d 634 (2002). However, there is no universal test by which directory provisions of a statute may be distinguished from mandatory provisions. *Anderson v. Board of Educational Lands & Funds*, 198 Neb. 793, 256 N.W.2d 318 (1977). Ordinarily, such differences must be determined by the intent of the Legislature as gleaned from the whole statute. *Id.* While the word "shall" may render a particular provision mandatory in character, when the spirit and purpose of the legislation require that the word "shall" be construed as permissive rather than mandatory, such will be done. *State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998); *Hartman v. Glenwood Tel. Membership Corp.*, 197 Neb. 359, 249 N.W.2d 468 (1977). We have expressed reluctance to find statutory provisions mandatory where some-

thing less than strict compliance would not interfere with the fundamental purpose of a statute. See, *State v. $1,947, supra* (holding "shall" directory because failure to strictly adhere to outlined procedures did not interfere with fundamental purpose of ensuring due process); *In re Interest of C.P.*, 235 Neb. 276, 455 N.W.2d 138 (1990) (holding "shall" directory where failure to comply with time limitations did not interfere with statute's purpose to protect best interests of child).

■ The fundamental purpose expressed in the Public Accountancy Act is to "ensur[e] that the public is able to distinguish among those who are permitted [through appropriate qualification] to practice public accountancy and those who are not." *Forgét v. State*, 265 Neb. 488, 497-98, 658 N.W.2d 271, 279 (2003). Under the act, the Board is charged with overseeing and regulating the educational, demonstrated knowledge, and administrative requirements of the CPA examination to ensure the act's purpose is served. In particular, the Board is charged with issuing certificates to "qualified persons" and "monitoring the requirements for continued issuance of certificates and permits." § 1-105.01(2) and (3). A reasoned refusal to issue a certificate under § 1-114 would not interfere with the public interest which the public accountancy statutes are intended to protect, but, rather, may further that purpose. Statutes relating to the same subject matter will be construed so as to maintain a sensible and consistent scheme and so that effect is given to every provision. *Soto v. State*, 269 Neb. 337, 693 N.W.2d 491 (2005); *Unisys Corp. v. Nebraska Life & Health Ins. Guar. Assn.*, 267 Neb. 158, 673 N.W.2d 15 (2004). We therefore conclude that the term "shall" as used in § 1-114 is permissive rather than mandatory.

This does not, however, dispose of the action. We must further determine whether the Board has the power to refuse to issue a certificate based upon the character and fitness of the applicant and, if so, whether the Board properly exercised that power when it refused to issue a certificate to Troshynski. The Board does not contend that it has express statutory authority to consider the character and fitness of an applicant in deciding whether to issue a certificate. Instead, it relies on our holding in *Bartlett v. State Real Estate Commission*, 188 Neb. 828, 199 N.W.2d 709 (1972), for the proposition that its duty to maintain a high standard of

integrity and its authority to revoke certificates under § 1-137 give it inherent authority to refuse to issue a certificate based on an applicant's character and fitness.

After passing the necessary written examination, the applicant in *Bartlett* applied to the State Real Estate Commission for licensure as a real estate salesman. The commission denied the application because earlier in the same year, the Nebraska Department of Insurance had revoked the applicant's license to sell insurance for 5 years after finding that he had engaged in multiple acts of fraud, misrepresentation, and dishonest practices. The applicant argued that the commission did not have discretion to deny a license to any individual who possessed the qualifications enumerated in the statute that governed licensure. We rejected this argument and upheld the commission's denial of the license, stating that "[w]hile the statute here does not expressly provide that applicants for a real estate salesman's license must be of good moral character or must be fit and proper persons to engage in the business, we think such a requirement is implicit in the qualifications necessary for a license." 188 Neb. at 832, 199 N.W.2d at 712. The same is true for those applying for a certificate of public accountancy. We agree with the district court that, like attorneys or medical professionals, certified public accountants must demonstrate a high degree of moral and ethical integrity.

The Board's duty to protect the public from unqualified individuals and firms encompasses oversight of those already practicing in the profession and oversight of those making initial application to practice. The Public Accountancy Act specifically grants the Board the authority to take disciplinary action against certificate or permit holders for violating a number of causes inconsistent with good moral character. § 1-137. The act also charges the Board with monitoring the requirements for continued issuance of certificates and permits. § 1-105.01(3). No person may practice or engage in business as a certified public accountant without a certificate issued by the Board. § 1-151. There is no reasonable justification for requiring the Board to ignore the character or fitness of an applicant and to shut its eyes to all prior conduct of an applicant simply because the statute does not specify those requirements in detail. See *Bartlett, supra.* Therefore, we hold that the act implicitly permits the Board to

use its rulemaking authority under § 1-112 to promulgate standards and procedures whereby the character and fitness of an applicant for initial certification may be considered by the Board in determining whether the applicant is a qualified person under § 1-105.01.

The rules and regulations enacted by the Board are found in title 288 of the Nebraska Administrative Code. Pursuant to § 1-112, the Board has adopted rules of professional conduct in chapter 5. See 288 Neb. Admin. Code, ch. 5, § 001 (1999). Additionally, the Board has adopted rules regarding allegations that certificate or permit holders have violated a provision of chapter 5 or one or more of the items listed in § 1-137. See 288 Neb. Admin. Code, ch. 4, §§ 004.02, 005, and 006 (1995). These rules require, inter alia, an investigation into probable cause, a formal hearing where probable cause has been established, appropriate notice of the hearing, and that the complaint sets forth specific charges. *Id.* Chapter 6 governs the application process for the CPA examination and administration of the examination. There are no rules in chapter 6 specifically, or in title 288 generally, pertaining to character and fitness standards or procedures applicable to initial certification.

The Board relies upon *Bartlett v. State Real Estate Commission*, 188 Neb. 828, 199 N.W.2d 709 (1972), for its authority to refuse an initial application even when the applicant has met the statutory requirements. In that case, the State Real Estate Commission retained specific authority to deny an initial license without administrative rules where a "thorough examination of the statutes" reflected the "clear intent of the Legislature to vest full power in the commission to regulate the issuance of licenses." *Id.* at 832, 199 N.W.2d at 712. In *Bartlett*, the State Real Estate Commission was expressly given the " 'full power to regulate the issuance of licenses and to revoke or suspend licenses.' " 188 Neb. at 830, 199 N.W.2d at 711 (quoting Neb. Rev. Stat. § 81-879 (Reissue 1971), repealed by 1973 Neb. Laws, L.B. 68). The Board is not expressly granted any similar power to regulate license issuance under the Public Accountancy Act. Moreover, the statutes before us in *Bartlett* provided due process by statutorily instructing that

"[b]efore the commission shall deny any application for a license . . . it shall give the applicant . . . a hearing on the matter and shall, at least twenty days prior to the date set for the hearing, notify the applicant . . . in writing. Such notice shall contain an exact statement of the charges against him and the date and place of hearing."

188 Neb. at 831, 199 N.W.2d at 711 (quoting Neb. Rev. Stat. § 81-882(1) (Reissue 1971), repealed by 1973 Neb. Laws, L.B. 68). There is no similar provision in the Public Accountancy Act or in the Board's rules and regulations. Where an administrative body acts in a quasi-judicial manner, due process requires notice and an opportunity for a full and fair hearing at some stage of the agency proceedings. *Stoneman v. United Neb. Bank*, 254 Neb. 477, 577 N.W.2d 271 (1998); *City of Lincoln v. Twin Platte NRD*, 250 Neb. 452, 551 N.W.2d 6 (1996).

Thus, unlike the instant case, the statutory scheme in *Bartlett* granted the licensing commission more specific power with regard to initial licensing and also provided applicants with notice and an opportunity to be heard with respect to possible denial of an initial application. The statutory scheme also specifically provided an applicant with due process in the case of a license denial. Contrarily, when Troshynski applied for and was permitted to take the CPA examination, there was nothing in the statutes or in the Board's rules and regulations which would have placed him on notice that certification could be denied on character and fitness grounds even if he passed the examination. The fact that Troshynski was nevertheless granted a hearing by order of the district court to contest the validity of the denial of his certificate does not cure this deficiency. Although the Board determined after the court-ordered hearing that "an applicant for the CPA certificate must demonstrate the fitness of the applicant for such a certificate, which includes the prior moral conduct of the applicant and prior criminal conduct," this requirement is not mentioned in either the Board's rules or the notice of hearing issued to Troshynski. Because the Board had not established character and fitness standards and procedures through the proper exercise of its rulemaking authority, its attempt to do so on an ad hoc basis resulted in a denial of Troshynski's right to due process.

■ Where the record adequately demonstrates that the decision of the trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, an appellate court will affirm. *Dean v. Yahnke*, 266 Neb. 820, 670 N.W.2d 28 (2003). Although we disagree with the district court's interpretation of § 1-114 for the reasons set forth above, we conclude that its judgment is correct.

## CONCLUSION

The Board has not exercised its rulemaking authority to establish character and fitness standards and procedures applicable to persons applying for initial certification as a certified public accountant. In the absence of any such standards and procedures, the denial of Troshynski's application after he successfully passed the written examination and demonstrated that he met the residency requirements set forth in § 1-114 denied him due process of law. Accordingly, we affirm the judgment of the district court.

AFFIRMED.