JILL C. WATSON, NOW KNOWN AS JILL C. DAY, APPELLEE,
v. ROBERT W. WATSON, APPELLANT.
724 N.W.2d 24

Filed December 1, 2006. No. S-05-1423.

Chris A. Johnson, of Conway, Pauley & Johnson, P.C., for appellant.

Robin L. Binning, of Binning & Plambeck, for appellee.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

This case involves interstate jurisdictional questions governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2004). In 2002, the district court for Sarpy County, Nebraska, dissolved the marriage of Jill C. Watson (now known as Jill C. Day) and Robert W. Watson and awarded custody of the parties' children to Jill, subject to Robert's visitation rights. With the court's permission, Jill later moved with the children to Maryland.

In the case at bar, Robert filed a motion for contempt in the district court, alleging that Jill had refused to allow the children to visit him. Jill then moved the court to release its jurisdiction over the matter and transfer the cause to Maryland. The court sustained Jill's motion and denied Robert's contempt motion. Robert appeals from the court's order. We reverse the judgment and remand the cause with directions.

## SCOPE OF REVIEW

■ Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005).

■ This court has not previously discussed the standard of review regarding jurisdictional issues under the UCCJEA. The Nebraska Legislature adopted the UCCJEA to repeal and replace the Nebraska Child Custody Jurisdiction Act (NCCJA), operative January 1, 2004. See, 2003 Neb. Laws, L.B. 148; *White v. White*, 271 Neb. 43, 709 N.W.2d 325 (2006). In considering whether jurisdiction existed under the NCCJA, we stated that when a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law, which requires an appellate court to reach a conclusion independent from the trial court. However, when the determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *White v. White, supra.*

■ The question as to whether jurisdiction existing under the NCCJA should be exercised was entrusted to the discretion of the trial court and was reviewed de novo on the record for abuse of discretion. As in other matters entrusted to a trial judge's discretion, absent an abuse of discretion, the decision will be upheld on appeal. See *White v. White, supra.* We determine that the same standards of review should govern questions concerning whether jurisdiction exists under the UCCJEA and whether that jurisdiction should be exercised. Therefore, the question whether jurisdiction should be exercised under the UCCJEA is entrusted to the discretion of the trial court and is reviewed de novo on the record for abuse of discretion by the appellate court.

## FACTS

Robert and Jill were married in 1993. Three children were born of their marriage. The marriage was dissolved in June 2002 by decree of the district court for Sarpy County. Jill was awarded custody and control of the minor children, subject to reasonable visitation rights reserved in Robert.

On July 11, 2003, Jill filed an application to permanently remove the children from Nebraska to Maryland. The district court granted Jill's request. The Nebraska Court of Appeals affirmed the district court's order, but modified Robert's visitation schedule. See *Watson v. Watson,* No. A-03-1165, 2004 WL 1724902 (Neb. App. Aug. 3, 2004) (not designated for permanent publication). The children have resided in Maryland with Jill since October 18, 2003.

On October 22, 2004, Jill filed in the circuit court for Howard County, Maryland, a petition to register the dissolution decree and related judgments and to establish jurisdiction in that court. Robert filed no response, and the Maryland court granted Jill's petition.

On January 19, 2005, Jill filed in the Maryland court a petition to modify Robert's visitation schedule. Robert moved to dismiss, alleging that Nebraska had exclusive and continuing jurisdiction over the matter. The Maryland court denied Robert's motion. It concluded that because he had not objected to the registration of the dissolution decree and related judgments in Maryland, Robert had waived his right to challenge the authority of the court to enforce or modify such orders. Robert appealed

the Maryland court's order and requested review by an en banc panel. Robert's appeal is apparently pending in Maryland.

Robert filed a motion for contempt in the district court for Sarpy County on July 11, 2005, alleging that Jill had refused to allow the children to visit him. Jill subsequently filed a motion requesting that the district court relinquish jurisdiction of the pending matters and transfer jurisdiction to the State of Maryland. Jill informed the district court that she had registered the dissolution decree and related judgments in the Maryland court and that Robert had not objected to such registration.

On October 21, 2005, the district court determined that all matters related to the dissolution decree should be transferred to Maryland because Jill had registered the decree in the Maryland court and Robert had not objected. The district court granted Jill's motion to transfer jurisdiction and denied Robert's motion for contempt. Robert timely appealed the district court's ruling, and this court moved the appeal to its docket on its own motion, pursuant to its statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Robert claims, summarized and restated, that the district court erred (1) in not following the UCCJEA and (2) in denying his motion for contempt without hearing any evidence on the issue.

## ANALYSIS

Jurisdiction over child custody proceedings is governed by the UCCJEA. See Neb. Rev. Stat. § 42-351(1) (Reissue 2004). A child custody proceeding for purposes of the UCCJEA is a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. *Lamb v. Lamb*, 14 Neb. App. 337, 707 N.W.2d 423 (2005). See § 43-1227(4). The case at bar involves a child custody proceeding as defined in the UCCJEA.

The UCCJEA was promulgated by the National Conference of Commissioners on Uniform State Laws in 1997 to replace the Uniform Child Custody Jurisdiction Act (UCCJA) (which was referred to in Nebraska as "the NCCJA"). The UCCJEA has been adopted in 42 states, including Nebraska and Maryland. See Unif. Child Custody Jurisdiction and Enforcement Act

(1997), Table of Jurisdictions Wherein Act Has Been Adopted, 9 U.L.A. 74 (Cum. Supp. 2006).

In promulgating the UCCJEA, the National Conference of Commissioners on Uniform State Laws sought to clarify a number of ambiguities that had caused the UCCJA to be interpreted differently and applied inconsistently from one jurisdiction to another. See Kelly Gaines Stoner, *The Uniform Child Custody Jurisdiction & Enforcement Act (UCCJEA)—A Metamorphosis of the Uniform Child Custody Jurisdiction Act (UCCJA)*, 75 N.D. L. Rev. 301 (1999). For example, the UCCJEA clarifies the rules for original, modification, and enforcement jurisdiction. *Seamans v. Seamans*, 73 Ark. App. 27, 37 S.W.3d 693 (2001). The purposes of the UCCJEA are to avoid interstate jurisdictional competition and conflict in child custody matters, to promote cooperation between courts of other states so that a custody determination can be rendered in a state best suited to decide the case in the interest of the child, to discourage the use of the interstate system for continuing custody controversies, to deter child abductions, to avoid relitigation of custody issues, and to facilitate enforcement of custody orders. Unif. Child Custody Jurisdiction and Enforcement Act (1997), § 101, comment, 9 U.L.A. 657 (1999).

The UCCJEA requires courts, when applying and construing the act, to consider the need to promote uniformity of the law with respect to its subject matter among the states that enact it. See § 43-1265. The UCCJEA was intended to resolve jurisdictional conflicts that had arisen under the UCCJA due to unclear language and inconsistent application. See Stoner, *supra*. Conflicting interpretation of the UCCJA had resulted in a loss of uniformity among states. See Prefatory Note, Unif. Child Custody Jurisdiction and Enforcement Act (1997), 9 U.L.A. 649 (1999). See, also, *Vannatta v. Boulds*, 318 Mont. 472, 475, 81 P.3d 480, 482-83 (2003) (stating that one purpose of UCCJEA was to " 'eliminate inconsistent state court interpretations of jurisdictional issues' "). The goal of uniformity under the UCCJEA can be realized only if trial courts in each state make requisite considerations under the act and follow its procedures.

The district court for Sarpy County had exclusive and continuing jurisdiction under the UCCJEA of the custody and visitation

issues involved in this case because the court had made the initial child custody determination. See § 43-1239. Accord *Shanoski v. Miller*, 780 A.2d 275 (Me. 2001). Jurisdiction remained in the district court either until jurisdiction was lost under § 43-1239(a) or until the court declined to exercise its jurisdiction under § 43-1244 for the reason of an inconvenient forum. Below, we address whether either of those scenarios occurred.

### EXCLUSIVE AND CONTINUING JURISDICTION

Statutory interpretation is a matter of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the court below. *Troshynski v. Nebraska State Bd. of Pub. Accountancy*, 270 Neb. 347, 701 N.W.2d 379 (2005). The first issue presented is whether the district court's exclusive and continuing jurisdiction of this matter was lost under § 43-1239(a).

Section 43-1239(a) provides the rules for continuing jurisdiction, an issue which was not specifically addressed in the UCCJA. See Unif. Child Custody Jurisdiction and Enforcement Act (1997), § 202, comment, 9 U.L.A. 674 (1999). Section 43-1239(a) provides:

Except as otherwise provided in section 43-1241 [providing temporary emergency jurisdiction in cases of abandonment or abuse], a court of this state which has made a child custody determination consistent with section 43-1238 or 43-1240 has exclusive, continuing jurisdiction over the determination until:

(1) a court of this state determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

The district court maintained exclusive jurisdiction under § 43-1239. This jurisdiction would continue unless the district court determined that neither the children, nor the children and

one parent, nor the children and a person acting as a parent had a significant connection with this state and that substantial evidence was no longer available in this state concerning the children's care, protection, training, and personal relationships. The California Court of Appeal has observed the following concerning the California statute that is substantially equivalent to § 43-1239:

> Professor Robert G. Spector, the reporter for the committee which drafted the new uniform act, explained the intended application of [this section of the UCCJEA]: "So long as one parent, or person acting as a parent, remains in the state that made the original custody determination, only that state can determine *when the relationship between the child and the left-behind parent has deteriorated sufficiently so that jurisdiction is lost.*" (Spector, *Uniform Child-Custody Jurisdiction and Enforcement Act (with Prefatory Note and Comments)* (1998) 32 Family L.Q. 301, 340, fn. 81, italics added.) . . . If the remaining parent continues to assert and exercise his visitation rights, then the parent-child relationship has not deteriorated sufficiently to terminate jurisdiction.

*Grahm v. Superior Court*, 132 Cal. App. 4th 1193, 1198-99, 34 Cal. Rptr. 3d 270, 274 (2005).

Both parties have conceded that the district court had exclusive and continuing jurisdiction under § 43-1239. Despite the parties' belief that the district court did not lose its jurisdiction under § 43-1239, the court explained its decision to relinquish jurisdiction in the following manner:

> In granting [Jill's] Petition to Register the Decree [in Maryland], the Maryland Court specifically determined that [Jill] and the children reside in that state and it is the more appropriate and convenient forum for determining child custody issues, as outlined in § 43-1239[(a)](2). As such, this Court can and should relinquish its continuing and exclusive jurisdiction under [§ 43-1239(a)(1)] as requested by [Jill] in her Motion to Release Case and Transfer Jurisdiction. This will accomplish the moving of all matters with respect to these children and their best interests to the State in which they and one parent reside.

The district court's reading and application of § 43-1239 were in error. The district court found that the Maryland court had determined that Jill and the children resided in Maryland and that Maryland was the more appropriate and convenient forum. Although the district court cited § 43-1239(a)(2), neither the convenience nor the appropriateness of the forum is a factor to be considered under that statute. Exclusive and continuing jurisdiction could be lost only if the children, Jill, and Robert no longer resided in the state. See § 43-1239(a)(2). The district court erred in making such a determination because Robert continued to reside in Nebraska.

■ The district court also erred in relying on the Maryland court's determination that it was the more appropriate and convenient forum. Pursuant to § 43-1239(a)(1), whether a court's exclusive and continuing jurisdiction has been lost is a determination to be made by a court of this state. Moreover, such determination must be based upon a Nebraska court's finding that "neither the child, nor the child and one parent . . . have a significant connection with this state *and* that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships." (Emphasis supplied.) See § 43-1239(a)(1).

The National Conference of Commissioners on Uniform State Laws explained jurisdiction pursuant to this section of the UCCJEA in the following manner:

> In other words, even if the child has acquired a new home State, the original decree State retains exclusive, continuing jurisdiction, so long as the general requisites of the "substantial connection" jurisdiction provisions of [§ 43-1239(a)(1)] are met. If the relationship between the child and the person remaining in the State with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

Unif. Child Custody Jurisdiction and Enforcement Act (1997), § 202, comment, 9 U.L.A. 674 (1999).

The district court made no determination whether the children and one parent maintained a "significant connection" to this state or whether "substantial evidence" was available in this

state. See § 43-1239(a)(1). Therefore, we conclude that the district court's exclusive and continuing jurisdiction was not lost under § 43-1239.

## RELINQUISHING JURISDICTION UNDER UCCJEA
### FOR REASON OF INCONVENIENT FORUM

Although the district court did not lose its exclusive and continuing jurisdiction under § 43-1239, the court had discretionary authority under the UCCJEA to decline to exercise its jurisdiction. We now address whether the district court properly exercised its discretion to relinquish exclusive and continuing jurisdiction.

■ A court with exclusive and continuing jurisdiction under the UCCJEA may decline to exercise its jurisdiction if it determines that it is "an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." See § 43-1244(a). Although the district court concluded that the Maryland court was the "more appropriate and convenient forum," the district court failed to consider the relevant factors for relinquishing jurisdiction under § 43-1244.

Under the UCCJEA, a court may decline to exercise its jurisdiction only after the court considers certain factors. Section 43-1244 sets forth the proper procedure for relinquishing jurisdiction on the basis that the court is an inconvenient forum. The statute mandates:

> *Before determining whether it is an inconvenient forum,* a court of this state *shall consider* whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court *shall allow the parties to submit information* and *shall consider all relevant factors, including*:
>
> (1) whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
>
> (2) the length of time the child has resided outside this state;
>
> (3) the distance between the court in this state and the court in the state that would assume jurisdiction;
>
> (4) the relative financial circumstances of the parties;
>
> (5) any agreement of the parties as to which state should assume jurisdiction;

(6) the nature and location of the evidence required to resolve the pending litigation, including testimony of the child; ·

(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

(8) the familiarity of the court of each state with the facts and issues in the pending litigation.

(Emphasis supplied.) § 43-1244(b).

 Appellate courts give statutory language its plain and ordinary meaning and will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Curran v. Buser*, 271 Neb. 332, 711 N.W.2d 562 (2006). As a general rule, the word "shall" is considered mandatory and is inconsistent with the idea of discretion. *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 647 N.W.2d 615 (2002). Before determining whether it is an inconvenient forum, the UCCJEA requires a court to "allow the parties to submit information" and to consider "all relevant factors." See § 43-1244(b). In the instant case, no evidentiary hearing was conducted and the district court made no analysis under § 43-1244(b) before it relinquished exclusive and continuing jurisdiction to the Maryland court.

In concluding that Maryland was a more appropriate forum, the district court relied upon the fact that Jill had registered the dissolution decree and related judgments in Maryland and that Robert had not objected. The district court also relied on the Maryland court's alleged determination that it was a more appropriate and convenient forum. While recognizing that the factors in § 43-1244(b) are not exhaustive, we note that the considerations made by the district court did not include the conditions expressed in § 43-1244(b).

The record before us contains copies of the orders issued by the Maryland court; however, the record does not indicate that the Maryland court "specifically determined that . . . it [was] the more appropriate and convenient forum for determining child custody issues." Our de novo review reveals that Jill registered the dissolution decree and related judgments in the Maryland court, without objection by Robert. Later, Jill filed a petition in

the Maryland court to modify the visitation schedule. Robert filed a motion to dismiss, alleging that Nebraska had exclusive and continuing jurisdiction. In denying Robert's motion, the Maryland court reasoned that Robert had waived his right to contest the authority of that court to enforce or modify the dissolution decree because he had not contested its registration. Thus, the record indicates that the Maryland court based its exercise of jurisdiction not on the fact that Maryland was a more convenient and appropriate forum, but on the fact that Robert did not object to the registration of the dissolution decree and related judgments in Maryland.

Whether the Maryland court erred in denying Robert's motion to dismiss and in exercising jurisdiction to modify the visitation schedule is not an issue before us and is apparently on appeal in Maryland. We refer to the Maryland court's decision because that is the basis upon which the district court relinquished its jurisdiction. Consideration of another state's exercise of jurisdiction is not a factor set forth in § 43-1244(b), and in this case, it was not a "relevant" factor under that section.

The State of Maryland has also adopted the UCCJEA. See Md. Code Ann., Family Law §§ 9.5-101 to 9.5-318 (LexisNexis 2006). Jill registered the dissolution decree and related judgments in the Maryland court, and Robert did not object to such enrollment. See, generally, Md. Code Ann., Family Law § 9.5-305 (setting forth procedure for registering child custody determination issued by court of another state). Accord § 43-1252. The uncontested registration of a Nebraska child custody determination in Maryland authorizes the Maryland court to *enforce* the Nebraska order. See Md. Code Ann., Family Law § 9.5-306. Accord § 43-1253(b) ("[a] court of this state shall recognize and enforce, but may not modify, except in accordance with sections 43-1238 to 43-1247, a registered child custody determination of a court of another state"). Whether Jill's registration of the dissolution decree and related judgments conferred on the Maryland court authority to *modify* those orders is apparently pending on appeal in Maryland.

Since Robert continued to reside in Nebraska, the Maryland court could obtain jurisdiction to modify Nebraska's child custody determination only if a Nebraska court first determined

either that it had lost its exclusive and continuing jurisdiction under § 43-1239 or that a Maryland court was a more convenient forum under § 43-1244. See Md. Code Ann., Family Law § 9.5-203. Accord § 43-1240. See, also, *Vannatta v. Boulds*, 318 Mont. 472, 81 P.3d 480 (2003) (holding that Montana court lacked jurisdiction to modify child custody determination of another state because other state had not determined that it no longer had exclusive, continuing jurisdiction or that Montana would be more convenient forum). The Maryland court's exercise of jurisdiction in the modification proceeding was not a factor to be considered by the district court under § 43-1244.

As a general rule, a decision to decline to exercise jurisdiction under the UCCJEA for the reason of an inconvenient forum is entrusted to the discretion of the trial court. See *Shanoski v. Miller*, 780 A.2d 275 (Me. 2001). Cf. *In re Interest of Floyd B.*, 254 Neb. 443, 577 N.W.2d 535 (1998) (stating that whether jurisdiction existing under NCCJA should be exercised was entrusted to discretion of trial court and reviewed de novo on record). Although the district court had discretionary authority under § 43-1244 to find that it was an inconvenient forum and thus to decline to exercise its jurisdiction, the court failed to correctly apply the provisions of § 43-1244(b) in making its determination.

In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *In re Estate of Rosso*, 270 Neb. 323, 701 N.W.2d 355 (2005). Section 43-1244(b) instructs trial courts to "allow the parties to submit information" and to "consider all relevant factors, including [certain specified considerations]." Prior to making a determination that another state is a more convenient forum, courts must consider relevant factors under § 43-1244(b). Because an evidentiary hearing was not held, this court is unable to review whether the district court declined to exercise its jurisdiction for appropriate reasons. The record does not contain any evidence or analysis by the district court as required under § 43-1244.

In *Shanoski v. Miller, supra*, the Supreme Judicial Court of Maine considered whether the trial court had abused its discretion in declining to exercise jurisdiction under Maine's UCCJEA

for the reason of an inconvenient forum. In declining to exercise jurisdiction, the trial court stated that it had considered the inconvenient forum factors of the UCCJEA, but the court's ruling did not reflect a factor-by-factor analysis. On appeal, the Supreme Judicial Court of Maine analyzed each of the statutory factors and concluded that the trial court had not abused its discretion in declining to exercise jurisdiction.

Although the trial court in *Shanoski v. Miller, supra,* did not make findings for each factor of the inconvenient forum statute, the appellate court stated that the trial court's "thoughtful discussion" contained several findings regarding convenience, three of which findings related to the specified statutory factors. *Id.* at 280. An evidentiary hearing was not held on the mother's motion to decline jurisdiction because the parties agreed to let the trial court consider the motion by affidavit and exhibits. The appellate court stated that the statute did not expressly require trial courts to specifically enumerate their findings for each factor, but the court did require findings "sufficient to inform the parties of the court's reasoning and sufficient for effective appellate review." *Id.*

Section 43-1244 prescribes the method by which a trial court may relinquish its jurisdiction on the basis of an inconvenient forum. In the case at bar, no evidentiary hearing was afforded the parties at which they could "submit information" for the district court to consider. See § 43-1244(b). There is no record that the court considered the factors required by § 43-1244. After a court of this state has declined to exercise its jurisdiction under the UCCJEA, the objecting party is entitled to know that the trial court has engaged in a proper consideration of "all relevant factors" and to a record that allows for meaningful appellate review. See § 43-1244(b). For the reasons set forth above, we conclude that the district court erred by failing to comply with the provisions of the UCCJEA.

## MOTION FOR CONTEMPT

At a proceeding on August 5, 2005, the district court scheduled a hearing on Jill's motion to relinquish and transfer jurisdiction. The district court said it would wait to set a hearing on Robert's contempt motion until the jurisdictional issue was resolved.

Arguments were heard regarding Jill's motion on September 16. Following that hearing, the district court sustained Jill's motion, and the court denied Robert's motion for contempt. The record does not reflect that a hearing was ever held on Robert's motion before it was denied.

Robert argues that the district court erred in "dismissing" his motion for contempt without hearing any evidence on the issue. See brief for appellant at 15. The record shows that the court did not dismiss Robert's motion, but denied it. We interpret Robert's argument to mean that the district court erred because it issued a ruling on his contempt motion even though the court relinquished jurisdiction over the matter and even though a hearing was not held on that issue.

Robert contends the denial of his motion was error because the district court should have stayed the proceedings in Nebraska. We agree. The UCCJEA provides that

> [i]f a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

§ 43-1244(c). The district court erred in denying Robert's motion for contempt.

## CONCLUSION

The judgment of the district court is reversed, and the cause is remanded to that court with directions to hold an evidentiary hearing at which it will determine whether to decline to exercise jurisdiction in this matter pursuant to the UCCJEA. We further instruct the district court that if it declines to exercise jurisdiction, it should stay the motion for contempt in accordance with § 43-1244(c).

REVERSED AND REMANDED WITH DIRECTIONS.

HENDRY, C.J., not participating.