IN RE GUARDIANSHIP OF LAVONE M.,
A CHILD UNDER 18 YEARS OF AGE.
SHEILA M., APPELLANT, V. BARRY ZINO, APPELLEE.
610 N.W.2d 29

Filed May 9, 2000.   No. A-99-455.

Timothy C. Phillips, of Morrow, Poppe, Otte, Watermeier & Phillips, P.C., for appellant.

Susan Kubert Sapp, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

G. Roderic Anderson, of Mattson, Ricketts, Davies, Stewart & Calkins, for Lavone M.

HANNON, INBODY, and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Sheila M., the natural mother of Lavone M., appeals from an order of the county court for Lancaster County, finding Sheila and Cleveland M., Lavone's natural father, unfit parents and appointing Barry Zino as Lavone's guardian. For the reasons set forth below, we affirm.

## BACKGROUND

The record shows that Lavone was born on May 28, 1983. Cleveland and Sheila were divorced on May 14, 1984, and the decree of dissolution granted Sheila custody of Lavone. Shortly after Cleveland and Sheila's separation, Sheila moved in with Zino, her boyfriend. The record shows that Sheila and Zino never married but continued to reside together with Lavone until approximately July 1998, when Sheila moved out. The record shows that after moving out, Sheila attempted to pick Lavone up from summer school on or about July 15 and that Lavone refused to go home with Sheila. Sheila then called the police and reported Lavone as a runaway. The police took Lavone to Freeway Station, a nonprofit shelter for young people run by Cedars Youth Services.

On July 22, 1998, Zino filed a petition for the appointment of a temporary and a permanent guardian for Lavone in county court. In his petition, Zino alleged that the appointment of a temporary and a permanent guardian for Lavone was necessary because (1) Sheila and Cleveland had abandoned Lavone for 6 months or more immediately prior to the filing of the petition; (2) Sheila and Cleveland had substantially and continuously or repeatedly neglected Lavone and refused to give her necessary parental care and protection; (3) Sheila and Cleveland, being financially able, had willfully neglected to provide Lavone with the necessary subsistence, education, or other care necessary for her health, morals, or welfare or had neglected to pay for such subsistence, education, or other care when legal custody of Lavone was lodged with others and such payment ordered by the court; and (4) Sheila and Cleveland were unfit by reason of

debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct is found by the court to be seriously detrimental to Lavone's health, morals, or well-being. Zino alleged that there was an emergency need for the appointment of a temporary guardian without notice, pending notice and hearing. Zino stated that he was concerned about Lavone's physical and mental well-being if Lavone was not placed in his custody immediately.

On July 22, 1998, Lavone filed a motion, nominating Zino as her guardian pursuant to Neb. Rev. Stat. § 30-2610 (Reissue 1995). Lavone also filed an affidavit on the same date. In Lavone's affidavit, she stated that she has never met, seen, spoken to, or received communication of any type from Cleveland and that she does not know where he lives. Lavone stated that Sheila had abandoned and neglected her repeatedly for the past 15 years and that Zino had performed all of the necessary parental functions for the same period of time. Lavone stated that she had been living at the Freeway Station since July 15, 1998, and that she desired the immediate appointment of Zino as her temporary guardian so that she could return to live with Zino. Lavone stated that she feared for her safety and well-being if she lived with Sheila again and that she believed that Sheila would fail to provide her with adequate food, clothing, shelter, supervision, transportation, education, and medical care. Lavone also stated that if she resided with Sheila, Sheila would leave her unattended for days or weeks at a time.

On July 22, 1998, the county court filed an order, stating that an emergency existed and appointing Zino as Lavone's temporary guardian for a period not to exceed 120 days from the date of the order. The county court also set a hearing on Zino's petition for permanent guardianship and ordered that notice be given to the appropriate persons. Zino filed an acceptance of appointment and letters of appointment on July 22.

Sheila filed an answer and resistance to Zino's petition on August 21, 1998, and denied the allegations set forth in Zino's petition. Sheila stated that Zino had not allowed her to maintain contact with Lavone and that when she moved out of Zino's residence in July 1998, it was not her intention to abandon Lavone.

In an answer dated August 21, 1998, Cleveland stated that Sheila had abandoned and neglected Lavone repeatedly throughout the last 15 years and continually and habitually refused to provide Lavone with food, clothing, transportation, and medical care. Cleveland denied that he had abandoned Lavone and stated that he had maintained contact with Lavone by sending Lavone cards and by paying child support. Cleveland stated that he had been denied the opportunity to act as parent and natural guardian for Lavone as a result of Sheila's actions and the decree of dissolution which denied him the right to visit Lavone. Cleveland denied that Zino was a competent, suitable, and proper person to be Lavone's guardian and stated that it was not in Lavone's best interests for Zino to be Lavone's guardian. Cleveland requested that the court place Lavone with him as her natural parent and guardian because he had been ready, willing, and able to have a relationship with Lavone since her birth.

Zino filed replies on August 25, 1998, to Sheila's and Cleveland's answers.

In a stipulation filed September 28, 1998, Zino, Lavone, and Sheila agreed to continue the temporary guardianship for 6 months from the date of the stipulation, specifically waiving the statutory limits on the length of the temporary guardianship. The stipulation states that the parties neither admit nor deny the allegations in the petition for permanent guardianship. In an order filed September 29, 1998, the county court stated that it had reviewed the parties' stipulation and found its terms to be acceptable.

On February 10, 1999, Sheila filed a motion for summary judgment, stating that the county court lacked subject matter jurisdiction. After a hearing, the county court overruled Sheila's motion.

Trial on Zino's petition for appointment of a permanent guardian for Lavone was held on March 24, 1999. Lavone, Lavone's counselor, Zino, and Sheila testified at trial. Cleveland did not appear at the hearing even though he was given notice. Lavone testified that Zino had always been there for her while Sheila had not. Lavone testified that while Zino and Sheila lived together, Zino saw that she got off to school, helped her with her homework, attended parent-teacher conferences, attended her

special education sessions, purchased groceries, prepared meals, and purchased clothing and medication for her. Lavone testified that during the same time period, Sheila did not prepare meals for her or attend her school conferences. Lavone testified that Sheila would not allow her to have friends over, to go to her friends' homes, or to attend church.

Lavone testified that when Sheila came to pick her up from summer school in July 1998, she refused to go with Sheila and Sheila then called the police, reporting Lavone as a runaway. Lavone testified that the police picked her up and took her to the Freeway Station, where Lavone remained for a little over a week.

Lavone testified that Sheila typically worked from 3 to 11:30 p.m. and that while she lived with Sheila, Sheila would come home drunk in the early morning hours, scream and yell at Lavone and wake her up, and throw and break Lavone's personal items. Lavone testified that Sheila would regularly disappear for 4 or 5 days at a time, sometimes 2 weeks, and that Sheila would not say when or where she was going or when she would be back. Lavone testified that she had no way of contacting Sheila during her absences. Lavone testified that Sheila had taken several of her personal possessions for her own use, that Sheila did not give her any spending money, and that Sheila did not buy her food or clothes. Lavone testified that she did not want a relationship with Sheila and that she wanted Zino to be her guardian. Lavone testified that when she went to the Freeway Station she stated that she would kill herself if she had to live with Sheila, and she testified that she felt the same way on the date of trial.

Zino testified that he bought groceries, prepared meals for Lavone, purchased clothing for Lavone, and helped Lavone with her homework. Zino testified that Lavone has attention deficit disorder and that he actively worked with Lavone's special education teachers. Zino testified that he left his job at Nebraska Modular Homes as a general "technical manual" laborer 3 weeks before trial because he thought Lavone needed him to be at home. Zino testified that he could go back to work at any time if and when he chose to do so. Zino testified that he had seen several positive changes in Lavone in the last 9 months, including a better attitude, better choice of friends, increased interest in school, and attendance at church.

Zino testified that when Sheila resided with him and Lavone, Sheila would not allow Lavone to go to church and refused to buy Lavone clothes or medication for her asthma condition. Zino testified that during that same time period, Sheila came home intoxicated up to three or four times a week. Zino testified that Sheila would often leave home for a few days or a few weeks at a time and that he did not know where Sheila was on these occasions. Zino testified that Sheila had the option to work the day shift and that she refused.

Zino testified that he had slapped Lavone twice, that he then recognized that this form of discipline is inappropriate, and that he attended parenting classes voluntarily to learn more appropriate ways of disciplining Lavone. Zino testified that he had not interfered with Lavone's relationship with Sheila and that he encouraged Lavone's relationship with other members of her family. Zino testified that he did not receive any financial benefit from having Lavone reside with him.

Sheila testified that she separated from Cleveland a few months after Lavone was born and that she moved in with Zino soon after. Sheila testified that she did not work until Lavone went to school and that when Lavone started school, she attended a majority of Lavone's parent-teacher conferences. Sheila testified that she was also involved with Lavone's special needs program and that she, not Zino, helped Lavone with her homework. Sheila testified that she, not Zino, took Lavone to her doctors' appointments and to see two counselors and that she never refused to buy Lavone medication. Sheila testified that she did not tell Lavone that she could not attend church, but that Zino told Lavone that he did not want her attending church functions. Sheila testified that she did not have nor had she ever had a drinking problem. Sheila also testified that she was never gone for weeks on end and that she was only gone overnight on one occasion. Sheila stated that she did not take any of Lavone's possessions for her own use, except when she moved out of Zino's residence. Sheila testified that she took some of Lavone's possessions with her when she moved out because she was expecting Lavone to move in with her. Sheila testified that she worked second shift because she had not had an opportunity to work the day shift.

Sheila testified that while she lived with Zino, Zino disciplined Lavone by physically and verbally abusing her. Sheila testified that Zino struck Lavone more than twice and that Zino hit her as well. Sheila testified that Zino also verbally degraded her and put her down on a continual basis. Sheila testified that Zino often did so in front of Lavone.

Sheila testified that she moved out of Zino's house in July 1998 and that she rented a two-bedroom apartment so that Lavone could live with her. Sheila testified that she told Lavone she was moving out and asked Lavone to live with her. Sheila testified that Lavone initially said yes, but changed her mind when Sheila attempted to pick Lavone up from summer school. Sheila testified that she had tried to contact Lavone since Zino's appointment as Lavone's temporary guardian and that during her conversations with Lavone, she could hear Zino telling Lavone what to say. Sheila also testified that she asked to see Lavone after Zino's appointment and that Zino refused. Sheila testified that she was concerned about Lavone staying with Zino because of Zino's temper and his abusive behavior.

Camie Nitzel, Lavone's counselor, testified that Zino is Lavone's psychological parent, meaning that "while that individual [Zino] may not have parented the child [Lavone] biologically, that person is parenting the child in terms of their emotional and psychological development and being a support person for that." Nitzel testified that she had been counseling Lavone since July 1998 and that in her opinion, there was no evidence of any attachment or bonding between Sheila and Lavone. Nitzel stated that in her opinion, Sheila had emotionally neglected Lavone, and that at the time of trial, Lavone and Sheila could not have a workable relationship. Nitzel testified that it would be detrimental to Lavone if she was sent to live with Sheila. Nitzel testified that Lavone needed to remain with Zino. Nitzel testified that she had seen several positive changes in Lavone in the 9 months prior to trial, specifically that Lavone had set goals for herself, that Lavone was more open, and that Lavone laughed more often.

On rebuttal, Lavone testified that Zino did not tell her that she could not go to church. Lavone testified that Zino did not call her and Sheila names. Lavone also testified that she did not tell Sheila that she wanted to move in with her.

In an order filed March 25, 1999, the county court appointed Zino as Lavone's permanent guardian, stating that the appointment was in Lavone's best interests. The court stated that Sheila and Cleveland were unfit and that the appointment of Zino was necessary as a means of giving medical consents and providing continuing care and supervision of Lavone. The county court also found that there was sufficient evidence to show that Cleveland abandoned Lavone for 6 months or more prior to the filing of the petition and that both Sheila and Cleveland substantially and continuously or repeatedly neglected Lavone and refused to give her necessary parental care and protection. The court found that there was insufficient evidence to show that Sheila and Cleveland, being financially able, had willfully neglected to provide Lavone with the necessary subsistence, education, or other care necessary for her health, morals, or welfare or had neglected to pay for such subsistence, education, or other care when legal custody of Lavone was lodged with others and such payment was ordered by the court. The county court also found that there was insufficient evidence to show that Sheila or Cleveland were unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct was found by the court to be seriously detrimental to Lavone's health, morals, or well-being.

On April 13, 1999, Sheila filed a motion to vacate the county court's judgment for fraud practiced upon the court by Zino in obtaining the judgment. The county court subsequently overruled Sheila's motion.

## ASSIGNMENTS OF ERROR

On appeal, Sheila argues that the county court erred in (1) overruling her motion for summary judgment and exercising subject matter jurisdiction in a matter which was under the jurisdiction of the district court, (2) granting Zino both temporary and permanent guardianship of Lavone, and (3) terminating her parental custody rights via a guardianship proceeding.

## STANDARD OF REVIEW

A proceeding for the appointment of a guardian in a probate matter is reviewed on appeal for error on the record. *In re Interest of Justin C. et al.*, 7 Neb. App. 251, 581 N.W.2d 437

(1998). On questions of law, an appellate court has an obligation to reach its own conclusions independent of those reached by the lower courts. *Id.*

## ANALYSIS

*Summary Judgment.*

On appeal, Sheila argues that the county court erred in overruling her motion for summary judgment and exercising subject matter jurisdiction in a matter which was under the jurisdiction of the district court. Specifically, Sheila argues that subsequent to Zino's filing of a petition for guardianship in the county court for Lancaster County, Cleveland filed a motion in Lancaster County District Court, requesting that the district court modify the parties' divorce decree and award him visitation with Lavone. Sheila appears to argue that because Cleveland's motion for visitation was pending in district court, the county court was precluded from holding a hearing on Zino's petition for guardianship until Cleveland's motion was disposed of.

The record shows that Sheila filed a motion for summary judgment on February 10, 1999, stating that the county court lacked jurisdiction over the guardianship proceedings. A hearing was subsequently held on Sheila's motion. At that hearing, Sheila asked the county court to take judicial notice of the entire district court file constituting Sheila and Cleveland's divorce action, and none of the parties objected to Sheila's request. Even so, we hold that this was not appropriate judicial notice.

A trial court may use appropriate judicial notice in resolving a motion for summary judgment. *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990). "An entire trial record cannot be said to fall within the definition of a judicially noted fact as set out in Neb. Rev. Stat. § 27-201(2) (Reissue 1985)." *State v. Ryan*, 233 Neb. 74, 130, 444 N.W.2d 610, 645-46 (1989). Further, in *Gottsch, supra*, the Supreme Court held that " '[a]s a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.' " 235 Neb. at 835-36, 458 N.W.2d at 456. The Nebraska Supreme Court has further held, " 'Papers requested to be noticed must be marked,

identified, and made a part of the record. Testimony must be transcribed, properly certified, marked and made a part of the record. . . .' " *In re Interest of C.K., L.K., and G.K.*, 240 Neb. 700, 709, 484 N.W.2d 68, 73 (1992) (quoting *In Interest of Adkins*, 298 N.W.2d 273 (Iowa 1980)). Although a court has the right to examine its own records and take judicial notice of its own proceedings and judgment in a prior case, this rule is inapplicable in the instant case since Sheila asked the county court to take judicial notice of a prior proceeding or judgment held in the district court, not in the county court. See *Association of Commonwealth Claimants v. Moylan*, 246 Neb. 88, 517 N.W.2d 94 (1994).

In the instant case, because of the judicial notice, Cleveland's motion for visitation allegedly filed in the district court is not before us. Without commenting on the effect this motion would have on the county court's jurisdiction over the guardianship proceedings, we note that for evidence to be considered by an appellate court, the evidence must have been offered below and must appear in the record on appeal. *In re Interest of Crystal T.*, 4 Neb. App. 503, 546 N.W.2d 77 (1996). Given the record before us, Sheila's assignment of error regarding the county court's denial of her motion for summary judgment is without merit.

*Temporary Guardianship.*

Sheila contends that the court erred in initially granting Zino temporary guardianship of Lavone because no emergency existed.

Neb. Rev. Stat. § 30-2611(c) (Reissue 1995) states:

If necessary, the court may appoint a temporary guardian, with the status of an ordinary guardian of a minor, but the authority of a temporary guardian shall not last longer than six months. In an emergency, the court may appoint a temporary guardian of a minor without notice, pending notice and hearing.

On July 22, 1998, Zino filed a petition requesting that the court appoint him as Lavone's temporary and permanent guardian. In his petition, Zino stated that an emergency existed and that the court should appoint him as Lavone's temporary

guardian without notice, pending notice and hearing. Zino stated that he was concerned about Lavone's physical and mental well-being if Lavone was not placed in his custody immediately. Specifically, Zino stated that both Sheila and Cleveland had abandoned Lavone and were disqualified from acting as her natural guardian. Zino alleged that Sheila had continually and habitually refused Lavone's requests to provide Lavone with food, suitable clothing for the elements, and transportation to church and school; to allow Lavone to see a counselor as recommended by her psychiatrist; and to obtain refills of her asthma and attention deficit disorder medication. Zino alleged that Cleveland had abandoned Lavone for the preceding 6 months and had had no contact with Lavone.

Similarly, in Lavone's affidavit filed on July 22, 1998, Lavone requested that Zino be appointed as her guardian. Lavone stated her belief that if she lived with Sheila again, Sheila would fail to provide her with adequate food, clothing, shelter, supervision, transportation, education, and medical care. Lavone stated that Sheila would leave her unattended for days or weeks at a time. Lavone also stated that she had never met, seen, or spoken to Cleveland or received communication of any type from him and that she was unaware of his whereabouts.

On July 22, 1998, the county court filed an order, stating that an emergency existed and that Zino should be appointed as Lavone's temporary guardian for a period not to exceed 120 days from the date of the order, pending notice and hearing. The county court set a hearing on Zino's petition for permanent guardianship and ordered that notice be given to the appropriate persons.

On September 28, 1998, Zino, Lavone, and Sheila stipulated to a continuation of the temporary guardianship for 6 months from the date of the stipulation, specifically waiving the statutory limits on the length of the temporary guardianship. The stipulation stated that the parties neither admitted nor denied the allegations in the petition for permanent guardianship.

In an order filed September 29, 1998, the county court stated that it had reviewed the parties' stipulation and found its terms to be acceptable.

■ Sheila argues, "The order awarding Appellee [Zino] temporary guardianship was improper simply because there was no

emergency." Brief for appellant at 11. Elsewhere in Nebraska case law, an emergency has been defined as " ' " '[a]ny event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition.' " ' " *In re Estate of Wilson*, 8 Neb. App. 467, 473, 594 N.W.2d 695, 701 (1999), quoting *Steenblock v. Elkhorn Township Bd.*, 245 Neb. 722, 515 N.W.2d 128 (1994). Given the allegations in Zino's petition and Lavone's statements in her affidavit, this situation clearly fell within the definition of an emergency. Therefore, the trial court did not err in appointing Zino as Lavone's temporary guardian after finding that an emergency existed.

*Permanent Guardianship.*

Sheila argues that in light of the constitutional right a parent has to the custody of his or her biological child, the county court erred in accepting the evidence at trial as sufficient to deny her that fundamental right. Sheila contends that "[i]n the event that it is determined that the prior guardianship proceedings were valid, and that the exercise of jurisdiction was proper, it is clear that [Sheila] is not an unfit mother." Brief for appellant at 20.

Neb. Rev. Stat. § 30-2608(a) (Cum. Supp. 1998) states:

> The father and mother are the natural guardians of their minor children and are duly entitled to their custody and to direct their education, being themselves competent to transact their own business and not otherwise unsuitable. If either dies or is disqualified for acting, or has abandoned his or her family, the guardianship devolves upon the other except as otherwise provided in this section.

Section 30-2608(d) states in part, "The court may appoint a guardian for a minor if all parental rights of custody have been terminated or suspended by prior or current circumstances or prior court order." Neb. Rev. Stat. § 30-2610 (Reissue 1995) states:

> The court may appoint as guardian any person whose appointment would be in the best interests of the minor. The court shall appoint a person nominated by the minor, if the minor is fourteen years of age or older, unless the

court finds the appointment contrary to the best interests of the minor.

Section 30-2611(b) states:

> Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 30-2608 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings, or make any other disposition of the matter that will best serve the interest of the minor.

In a child custody controversy between a biological or adoptive parent and one who is neither a biological nor adoptive parent of the child involved in the controversy, a fit biological or adoptive parent has a superior right to custody of the child. *In re Interest of Amber G. et al.*, 250 Neb. 973, 554 N.W.2d 142 (1996).

> A court may not properly deprive a biological or adoptive parent of the custody of the minor child unless it is affirmatively shown that such parent is unfit to perform the duties imposed by the relationship or has forfeited that right; neither can a court deprive a parent of the custody of a child merely because the court reasonably believes that some other person could better provide for the child.

*Id.* at 982, 554 N.W.2d at 149.

While a parent has a natural right to the custody of his or her child, the court is not bound as a matter of law to restore a child to a parent under any and all circumstances. *In re Interest of Amber G. et al.*, *supra.* A parent's natural right is limited by the State's power to protect the health and safety of the children. *Id.* The best interests of the children must always be considered in determining matters of child custody, and where the parent is shown to be unfit or to have forfeited his or her superior right to custody, the court may place the children in the custody of an unrelated third party. *Id.*

In the instant case, given Lavone's and Zino's testimony as set forth in the background section, the county court did not err in appointing Zino as Lavone's guardian in accordance with the above statutes. Clearly, Lavone's welfare and Lavone's best interests will be served by the requested appointment. Although

this is true, we recognize that in appointing Zino as Lavone's permanent guardian, the court found that Sheila is unfit and that Sheila substantially and continuously or repeatedly neglected Lavone and refused to give her necessary parental care and protection. We note that such findings were unwarranted in the instant case given that this is not a juvenile proceeding. Instead, the evidence supports the court's determination that the appointment of Zino as Lavone's guardian is in Lavone's best interests. Therefore, there is no error on this record regarding the county court's appointment of Zino as Lavone's permanent guardian. A proper result will not be reversed merely because it was reached for the wrong reasons. *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997).

*Termination.*

Sheila argues that the court's appointment of Zino as Lavone's permanent guardian effectively terminated her parental rights to Lavone. We recognize that a guardianship proceeding is not a proper means to terminate a parent's constitutional right to the custody of her or his children. *In re Guardianship of Zyla*, 251 Neb. 163, 555 N.W.2d 768 (1996). The Nebraska Supreme Court has stated that the appointment of a guardian is not a de facto termination of parental rights which results in a final and complete severance of a child from a parent and removes the entire bundle of parental rights. *Id.* Granting one legal custody of a child confers neither parenthood nor adoption; a guardian is subject to removal at any time. *Id.*, citing *In re Interest of Amber G. et al., supra.* Similarly, guardianships are temporary and depend upon the circumstances existing at the time. *Id.*, citing *In re Guardianship of Copenhaver*, 124 Idaho 888, 865 P.2d 979 (1993). Clearly, given the above law, the court's appointment of Zino as Lavone's guardian is temporary, Zino is subject to removal at any time, and Sheila's parental rights remain intact. Therefore, Sheila's assignment of error is without merit.

## CONCLUSION

For the reasons set forth above, we conclude that the county court did not err in overruling Sheila's motion for summary

judgment or in granting Zino temporary and permanent guardianship of Lavone. The county court's appointment of Zino as Lavone's guardian did not terminate Sheila's parental rights. Therefore, we affirm the county court's orders overruling Sheila's motion for summary judgment and appointing Zino as Lavone's temporary and permanent guardian.

AFFIRMED.