762 N.W.2d 615 (2009)
17 Neb. App. 340
In re GUARDIANSHIP AND CONSERVATORSHIP OF ISAAC McDOWELL AND MARIANNA McDOWELL, minor children.
Carolyn McDowell Rosenquist, appellant,
v.
Raul Ambriz-Padilla et al., appellees.
No. A-08-517.
Court of Appeals of Nebraska.
January 20, 2009.
*616 John B. McDermott and Mark Porto, of Shamberg, Wolf, McDermott & Depue, Grand Island, for appellant.
*617 D. Brandon Brinegar and Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., Kearney, for appellees.
INBODY, Chief Judge, and SIEVERS and MOORE, Judges.
SIEVERS, Judge.
On February 18, 2008, Chris McDowell murdered his wife, Erika Ambriz McDowell, and then committed suicide. As a result, their children, Isaac McDowell, born January 4, 2001, and Marianna McDowell, born June 13, 2004, were orphaned. By a last will and testament executed 4 days before the murder and suicide, Chris named his mother, Carolyn McDowell Rosenquist of Phoenix, Arizona, as guardian of his children. This will made no mention of his wife, Erika. Erika's parents, Raul Ambriz-Padilla and Maria Ambriz-Trujillo, were appointed as temporary guardians of the children, and their son and Erika's brother, Jorge Ambriz, was appointed as temporary conservator. Thereafter, Carolyn sought appointment as guardian and conservator, and Raul, Maria, and Jorge sought permanent appointment as guardians and conservator, respectively. After an evidentiary hearing on April 15, 2008, the county court for Dawson County, Nebraska, appointed Raul and Maria as guardians of Isaac and Marianna and appointed Jorge as the conservator to manage their property. Carolyn has timely perfected her appeal from the order of the county court.

ASSIGNMENT OF ERROR
Carolyn asserts that "[t]he trial court abused its discretion by failing to appoint Carolyn as guardian/conservator."

STANDARD OF REVIEW
A proceeding for the appointment of a guardian in a matter arising under the Nebraska Probate Code is reviewed for error on the record. See In re Guardianship of Lavone M., 9 Neb.App. 245, 610 N.W.2d 29 (2000). When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. In re Estate of Baer, 273 Neb. 969, 735 N.W.2d 394 (2007).

ANALYSIS
As indicated earlier, the children's father executed a will 4 days before the murder of their mother and his suicide, in which will he named his mother, Carolyn, as guardian of Isaac and Marianna. The county court for Dawson County made the following finding in its journal entry deciding this contested matter:
8. The Court finds that the provisions of the Last Will and Testament do not apply as it was prepared four days prior to death and the specific nomination should not be controlling. The Court notes specifically Nebr.Rev.Stat. § 30-2608(d), as amended, and notes that this appointment has not been nullified by § 30-2607 as to who has priority.
Carolyn argues, summarized, that the journal entry's paragraph 8 is an incorrect construction of the cited statute:
It is clear that the court misreads Neb.Rev.Stat. § 30-2608(d) as there was, indeed, a guardian appointed by a will as provided in Section 30-2606 and that appointment was not prevented nor nullified under Section 30-2607 as there were no children over the age of fourteen who objected to this appointment.
Brief for appellant at 8.
It is true that the trial court's reference to Neb.Rev.Stat. § 30-2607 (Reissue 2008) was misplaced, because such statute allows for minor children, age 14 and older, to *618 object to a testamentary appointment of a guardian made under Neb.Rev.Stat. § 30-2606 (Reissue 2008), and neither Isaac nor Marianna was yet age 14.
Neb.Rev.Stat. § 30-2608(d) (Reissue 2008) allows for priority of a testamentary appointment:
The court may appoint a guardian for a minor if all parental rights of custody have been terminated or suspended by prior or current circumstances or prior court order. A guardian appointed by will as provided in section 30-2606 whose appointment has not been prevented or nullified under section 30-2607 has priority over any guardian who may be appointed by the court but the court may proceed with an appointment upon a finding that the testamentary guardian has failed to accept the testamentary appointment within thirty days after notice of the guardianship proceeding.
Carolyn reasons that she has priority over any guardian who may be appointed by the court. Carolyn also argues that because she had not failed to accept the appointment, and because § 30-2608(d) does not provide the court with any basis to make an appointment of any person other than Carolyn, the county court erred.
The trial court, after paragraph 8 quoted above, did note that Carolyn had not failed to accept the guardianship, but the trial court's order continued:
9.... Notwithstanding that, the Court finds:
A. Both grandparents [we assume the court meant Raul, Maria, and Carolyn] are qualified and the Court must look at the best interests of the minor children.
B. The Court notes that [Raul and Maria's] children received a good education and excellent schooling and there is extended family to support the two minor children.
10. It is in the best interests of both children that Raul Ambriz-Padilla and Maria Ambriz-Trujillo be appointed as guardians for Isaac McDowell and Marianna McDowell.
11. The Court further finds that it is in the best interests of the children that Jorge Ambriz be appointed conservator.
The trial court's conclusion in its paragraph 8 that the specific nomination of a guardian in Chris' last will and testament was not controlling because it was prepared 4 days prior to his death does not appear to have any legal basis, unless the court intended to base its conclusion on the homicide probate statute, Neb.Rev.Stat. § 30-2354 (Reissue 2008), although the court did not cite the statute. Under § 30-2354(a), "A surviving spouse, heir or devisee who feloniously and intentionally kills or aids and abets the killing of the decedent is not entitled to any benefits under the will or under this article ...." See In re Estate of Krumwiede, 264 Neb. 378, 647 N.W.2d 625 (2002) (county court's removal of husband as personal representative upon finding that husband had intentionally and feloniously killed wife affirmed). The opinion in In re Estate of Krumwiede, through its quotation of the comment to § 2-803 of the Uniform Probate Code, suggests that § 30-2354 is designed to prevent the killer, who is still alive, a circumstance not involved here, from sharing in the estate. But, we need not decide whether the homicide statute voids a killer's nomination of a guardian for his children, because this case is resolved on other grounds. See Kelly v. Kelly, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court is not obligated to engage in analysis which is not needed to adjudicate case and controversy before it).
*619 We hold that, irrespective of the circumstances of the parents' deaths, under Nebraska law, the determination of who shall be guardian and conservator is ultimately dependent upon the best interests of the children, although a testamentary nomination of a guardian or conservator may have statutory priority. See In re Estate of Jeffrey B., 268 Neb. 761, 688 N.W.2d 135 (2004).
In re Estate of Jeffrey B., supra, involved a situation in which the parents of the children were both deceased. The father was the last to die, by a heroin overdose. His will appointed George and Catherine Shaner as testamentary guardians and James and Teresa Riggins as successor guardians. The Rigginses filed a motion to be appointed as guardians and to remove the Shaners, who had previously been appointed. The county court granted the motion, and upon the Shaners' appeal, the Nebraska Supreme Court said that the question presented was what presumption, if any, must be overcome to remove a minor's testamentary guardian. The rather complicated factual background in In re Estate of Jeffrey B. is fully set forth in the Supreme Court's opinion, and its recitation here is not necessary. That said, the Shaners argued that their testamentary appointment was controlling, citing La Velle v. Clymer, 194 Neb. 91, 230 N.W.2d 213 (1975), wherein the Supreme Court stated that the testamentary appointment of the minor's guardian "`cannot be ignored.'" 268 Neb. at 771, 688 N.W.2d at 144. The court in In re Estate of Jeffrey B. first pointed out that La Velle was decided before the adoption of the current Nebraska Probate Code. The court further said:
Second, the Shaners fail to note our conclusion in La Velle that "[i]t is generally held that [a testamentary appointment of a guardian] will be upheld unless the best interests of the child require otherwise." (Emphasis supplied.) 194 Neb. at 93, 230 N.W.2d at 216. As explained above, this standard is consistent with that imposed by current Nebraska law.
In re Estate of Jeffrey B., 268 Neb. at 772, 688 N.W.2d at 144.
The court's ultimate conclusion in In re Estate of Jeffrey B. was that where a parent's constitutionally protected relationship with a child is not at issue, both public policy and Nebraska law require that the guardianship at issue be determined by a reference to the paramount concern in child custody disputesthe best interests of the child. In summary, there can be no doubt that the Nebraska Supreme Court has made the best interests of the children the determining factor, irrespective of the testamentary appointment of a guardian. Despite the superfluous language in paragraph 8, it is clear from a complete reading of the county court's order that the rationale for its appointment of Raul and Maria was premised upon the best interests of the children. Therefore, we review that determination for error on the record, which takes us to the facts revealed about Raul and Maria and Carolyn and the respective environments they offer Isaac and Marianna.
Carolyn is 52 years of age and in good health. She moved from Grand Island, Nebraska, to the Phoenix area approximately 3 years ago, where she worked at a title company until her layoff shortly before the hearing. Her current husband, unrelated to Isaac or Marianna except by marriage, is 58 years old and works as a handyman part of the year, and part of the year in organizing a golf tournament in the Phoenix area. Carolyn had two sons Chris, the children's father who committed suicide after murdering the children's mother, and another son, age 22, who by *620 Carolyn's admission has "mental health issues." Carolyn has returned to Nebraska three or four times to see the children in the 3 years since her move to Phoenix. Carolyn and her husband live in a two-bedroom apartment, which she describes as adequate and appropriate for the children to live with her. Isaac would attend a school located 2 miles from the apartment, and Carolyn plans to place Marianna in preschool. Carolyn and her husband have siblings in the Phoenix and Tucson, Arizona, areas.
On the day of the murder-suicide, Jorge immediately arranged for the children to be seen by Stacey Hunt-Amos, a licensed mental health practitioner and certified marriage and family therapist. Hunt-Amos saw the children the day after the deaths, the day after the funerals, and weekly thereafter up to the time of trial. Her opinion was that the children should stay in their present placement with Raul and Maria because they need continued stability. She also opined that they are presently doing well and have made improvement since the trauma of the deaths of their parents. Hunt-Amos limited her opinion to the "short term," defined as a year, due to her lack of contact with and knowledge about their paternal grandmother, Carolyn.
Jorge, Erika's brother, testified that he is employed by a manufacturing plant in Omaha, Nebraska, in the human relations department, that he has a dual degree from the University of Nebraska at Kearney, and that he is one class short of his master's degree. Jorge testified that his father, Raul, began coming to the United States from Mexico in 1984 and that the family moved to the United States in 1987. Raul and Maria have been married 40 years and produced four daughters and three sons, including Jorge. Jorge indicated that his oldest sister lives in Lexington, Nebraska. She has three children ranging from 5 to 10 years of age, all of whom are bilingual, as are Isaac and Marianna. Another sister who lives in Lexington owns the house where Raul and Maria reside with herand where Isaac and Marianna resided at the time of the hearing. Jorge's oldest brother also lives in Lexington. He is married and has two children, ages 3 and 9, who are also bilingual. One of Jorge's sisters lives in California, and his younger brother, Michael Ambriz, attends the University of Nebraska at Kearney. Michael lives in a residence hall in Kearney during the school year, is a senior by credit, and plays on the tennis team. After Erika's death, the family asked him to stay home during the spring semester of 2008, which he did. Jorge indicated that his parents do not speak English, but that they were extremely diligent in making sure that all of their children did their homework and participated in sports and school activities. Jorge testified that he and two of his sisters graduated from college. And Michael has nearly graduated with a degree in criminal justice. Given that Isaac and Marianna are bilingual, communication is not a concern. Jorge described his family as extremely close-knit, loving, and supportive. Maria is a stay-at-home mother, and Raul works for Wal-Mart. Maria is in her late 50's, and Raul is 61. Jorge testified that both of his parents are in excellent health, other than Maria's having diabetes.
As far as the living arrangements at the time of the hearing, Isaac still did not want to sleep alone, so Michael was sleeping with him in bunk beds, and Marianna did not want to sleep away from Maria. Raul testified that he and Maria were willing to be guardians. Raul has permanent resident status and has taken the citizenship test, but did not pass it, and plans on taking it again. Maria is a U.S. citizen. Raul has Saturdays and Tuesdays off, but *621 wants to change his days off to Saturdays and Sundays to be home with the children more. On the days that Raul does not pick up Isaac from school, Michael picks him up. Raul said that he has talked with the principal at Isaac's school and talks with Isaac's teacher every day. Raul said that he gives Isaac a dollar for every "100" he gets on his school papers and that the last time Isaac brought home papers, Raul had to pay him $7. Raul testified that Jorge and Michael were involved in school and sports and that Michael was a state champion in tennis. Raul said that he intends to introduce Isaac to the same activities and in fact is already doing so. Raul testified to the frequent contact Isaac and Marianna have with their cousins residing in Lexington.
Reviewing the trial court's determination of the appointment of Raul and Maria as guardians and Jorge as conservator, in light of the children's best interests, we cannot ignore the structure, support, love, and nurture provided by Raul and Maria and their familyaunts, uncles, and cousins. This familial relationship obviously provides a great deal of support for two children who have been traumatized by the sudden deaths of their parents. It is abundantly clear to us, as it was to the county court, that the children's best interests were best served by the appointment of Raul and Maria as their guardians. Raul and Maria, as well as their extended family, are in many ways an exemplary model for these children who have been tragically deprived of their own parents. It is apparent that they will have a loving and supportive environment in Lexington and will unquestionably be well cared for. That said, our conclusion does not denigrate in any way the love and concern Carolyn has for her grandchildren. Finally, Jorge is quite clearly a mature, responsible, and thoughtful young adult who is an appropriate conservator for the children.

CONCLUSION
The decision of the county court for Dawson County is based on the best interests of the children, it conforms to the law, it is supported by competent evidence, and it is neither arbitrary, capricious, nor unreasonable.
AFFIRMED.